# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

AMANDA A. PARRISH,

       **Plaintiff,**

v.                                     **No. CIV-16-453 LAM**

NANCY A. BERRYHILL, **Acting Commissioner**
of the Social Security Administration,

       **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for Payment of Benefits, or in the alternative, for Rehearing, with Supporting Memorandum* (*Doc. 20*) filed December 5, 2016 (hereinafter "motion"). On February 6, 2017, Defendant filed a response (*Doc. 22*) to Plaintiff's motion and, on February 21, 2017, Plaintiff filed a reply (*Doc. 23*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to have the undersigned United States Magistrate Judge conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 4* and *11*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 15*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be is **DENIED**, and the Commissioner's decision in this case should be **AFFIRMED**.

# I.  Procedural History

On May 18, 2012, Plaintiff protectively filed an application for Supplemental Security Income (hereinafter "SSI").  [*Doc. 15-8* at 2].  Plaintiff's application was denied at the initial level on August 24, 2012 (*Doc. 15-5* at 2), and at the reconsideration level on May 9, 2013 (*id*. at 12).  Plaintiff requested a hearing to review the denial of her application (*id*. at 18), and Administrative Law Judge Michelle K. Lindsay (hereinafter "ALJ") conducted a hearing on July 11, 2014 (*Doc. 15-3* at 30-56).  Plaintiff, who was then represented by attorney Michelle Baca, appeared and testified at the hearing (*id.* at 35-51), as did Vocational Expert Pamela Bowman (hereinafter "VE") (*id.* at 51-55).

On September 26, 2014, the ALJ issued a decision (*Doc. 15-3* at 12-24) finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled from the date her application was filed (*id*. at 12).  Plaintiff requested that the Appeals Council review the ALJ's decision.  *Id*. at 8.  On March 23, 2016, the Appeals Council denied Plaintiff's request for review on the ground that there was "no reason under our rules to review the [ALJ]'s decision."  *Id*. at 2.  This decision was the final decision of the Commissioner.  On May 18, 2016, Plaintiff filed her complaint in this case.  [*Doc. 1*].

# II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*,  522 F.3d 1093, 1096  (10th Cir. 2008)  (citing  *Hamilton v. Sec'y of Health & Human Servs.*,  961 F.2d 1495, 1497–98  (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*,

373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A);

20 C.F.R. § 416.905(a).   In light of this definition for disability, a five-step sequential evaluation process (hereinafter "SEP") has been established for evaluating a disability claim. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).   At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.   At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his or her residual functional capacity (hereinafter "RFC"), age, education, and work experience.   *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on April 21, 1984 and was 28 years old on May 18, 2012, the date she filed her disability application.   [*Doc. 15-8 at 2*].   Thus, for the purposes of her disability claim, Plaintiff is considered to be a "younger person."[1]   In her application, Plaintiff claimed to be disabled due to bipolar disorder, post-traumatic stress disorder ("PTSD"), depression, and thyroid disease.   *Id*. at 6.   Plaintiff did not complete high school, but obtained a GED in 2002 (*Doc. 15-3* at 35), and reads, writes, and understands English (*Doc. 15-8* at 6).   Plaintiff testified that she is

---

[1]   *See* 20 C.F.R. § 404.1563(c) (defining a "younger person" as "under age 50").

4

5-feet 5-inches tall and weighed 343 pounds at the time of the hearing. [*Doc. 15-3* at 38]. She lives with her fiancé in a second-story, walk-up apartment, and does not have a driver's license. *Id*. at 36-37.

Plaintiff's medical records include: consultative psychiatric examination report, dated January 28, 2010, by Anne Ortiz, M.D. (*Doc. 15-10* at 2-6); disability determination examination, dated May 21, 2010, by Matthew Caffrey, M.D. (*id*. at 8-10); preliminary report, dated June 12, 2012 (*id*. at 19-21) and clinic note, dated August 30, 2012 (*Doc. 15-11* at 19-21), from Lindsey E. Riggin, M.D.; disability determination examination, dated July 28, 2012, by Raul Neftali Young-Rodriguez, M.D. (*Doc. 15-10* at 29-31); mental status examination, dated July 20, 2012, by Mary S. Loescher, Ph.D. (*id*. at 34-37); treatment records, for the period from June 25, 2012 to April 24, 2013, from the Rape Crisis Center (*Doc. 15-12* at 2-46); treatment records, for the period from February 10, 2014 to March 24, 2014, from Rio Rancho Family Health Center (*id*. at 51-64); and mental RFC questionnaire, dated June 30, 2014 (*Doc. 15-13* at 3-11) and progress notes, for the period from April 7, 2014 to July 7, 2014 (*id*. at 13-28), from Jan Voshart, LPCC. Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the filing of her disability application on May 18, 2012. [*Doc. 15-3* at 14]. At step two, the ALJ found that Plaintiff has the following severe impairments: "bipolar disorder; anxiety disorder; post-traumatic stress disorder; personality disorder with cluster B traits; and alcohol and marijuana abuse." *Id*. The ALJ also found that there was "no objective medical evidence to support [Plaintiff]'s subjective complaints of dizziness," and that Plaintiff's hypothyroidism was "non-severe." *Id*. The ALJ also found "that [Plaintiff]'s back condition and obesity, alone or in combination, are 'non-severe'

impairments." *Id.* at 15. At the third step, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926)." *Id.* In reaching that conclusion, the ALJ considered Listings 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders) and 12.08 (Personality Disorders). *Id.* In evaluating these mental listings, the ALJ found that Plaintiff has "mild restriction" of her activities of daily living (*id.*), and "moderate difficulties" with both social functioning and concentration, persistence or pace (*id.* at 16). She also found that Plaintiff had not experienced any episodes of decompensation of extended duration. *Id.* The ALJ concluded that Plaintiff's impairments did not satisfy either the paragraph "B" or paragraph "C" criteria of the listings considered. *Id.*

Before step four, the ALJ found that Plaintiff had the RFC to perform:

a full range of work at all exertional levels but with the following non-exertional limitations:

• [Plaintiff] is limited to understanding, remembering, and carrying out simple instructions;

• [Plaintiff] is able to maintain attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task;

• [Plaintiff] should have only occasional public contact;

• [Plaintiff] should have only superficial interactions with co-workers and supervisors;

• [Plaintiff] should not be required to perform tandem tasks;

• [Plaintiff] requires work involving no more than occasional independent goal setting or decision making; and

• [Plaintiff] requires concrete, repetitive work.

*Id*. at 17. In support of this RFC assessment, the ALJ indicated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision." *Id*. at 18.

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a call center technical support clerk, which is sedentary, semi-skilled work. *Id*. at 22. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id*. at 23. In support of this finding, the ALJ relied on the VE's testimony that an individual of Plaintiff's age, with the same education, work experience, and RFC, could perform representative jobs such as: (1) industrial cleaner (DOT[2] 381.687-018), with 1,118,000 jobs nationally; (2) laundry worker (DOT 361.685-018), with 162,000 jobs nationally; (3) hand cleaner and polisher (DOT 709.687-010), with 71,000 jobs nationally; and (4) shipping-and-receiving weigher (DOT 222.387-074), with 46,000 jobs nationally. *Id*. All four of these representative jobs have a designated SVP rating of 2 (*id*.) and, therefore, are considered to be "unskilled" work.[3] The jobs of industrial cleaner and laundry worker are considered "medium" exertional level work, while the exertional level of both hand cleaner/polisher and shipping/receiving weigher is "light."

---

[2] DOT stands for Dictionary of Occupational Titles, which is available at http://www.occupationalinfo.org/ (site last visited April 11, 2017).

[3] SVP stands for Specific Vocational Preparation, which is a rating of the amount of time it takes "a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." POMS-DI-25001.00-B-79, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b79 (site last visited April 11, 2017). SVP level 2 jobs require "[a]nything beyond [a] short demonstration up to and including one month" of such preparation. *Id*. A job with an SVP rating of 1 or 2 is considered "unskilled work." POMS-DI-25001.00-B-88, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b88 (site last visited April 11, 2017).

*Id.* The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act "since May 18, 2012, the date the application was filed." *Id*. at 24.

## V.   Analysis

Plaintiff argues in her motion that:   (1) the ALJ's RFC analysis was flawed because she (a) did not properly weigh the opinion of counselor Jan Voshart, LPCC (*Doc. 20* at 15-20); (b) failed to properly consider the effect of Plaintiff's obesity (*id*. at 20-21); and (c) improperly discounted Plaintiff's credibility (*id*. at 21-22), and (2) the ALJ's step five finding is not supported by substantial evidence, because (a) there is a conflict between Plaintiff's RFC and the reasoning levels of the representative jobs, which the ALJ failed to resolve (*id*. at 22-24); and (b) the VE's testimony regarding the number of hand cleaner/polisher jobs "is unbelievable" (*id*. at 24-25).   In response, Defendant argues that:   (1) the ALJ's findings are both supported by substantial evidence and legally sound because she reasonably considered and weighed the medical opinions (*Doc. 22* at 13-20); and (2) the ALJ did not err by relying on the VE's testimony because GED reasoning levels "do[] not describe the specific mental or skill requirement of a particular job, but instead describe[] the general educational background that would ordinarily make an individual suitable for the job" (*id*. at 22-24).   In her reply brief, Plaintiff contends that Ms. Voshart's opinion was consistent with both her own findings and the opinion of Dr. Loescher, the agency's consulting examiner (*Doc. 23* at 3); (2) Defendant's argument regarding reasoning levels is "*post hoc* rationalization" (*id*. at 6); and (3) Defendant's failure to respond to Plaintiff's job numbers argument concedes it (*id*.).

## A. The ALJ's RFC Determination

### 1. Ms. Voshart's Assessments

Therapist Jan Voshart, LPCC, began seeing Plaintiff in weekly individual therapy sessions on April 7, 2014 to help Plaintiff deal with her various mental issues. [*Doc 15-13* at 23-28]. On June 30, 2014, Ms. Voshart filled out a mental RFC questionnaire for Plaintiff, which had been provided to her by Plaintiff's counsel. *Id*. at 3-11. Ms. Voshart skipped the diagnostic portion of the form (*id*. at 3-4), but circled the majority of symptoms listed under both affective and anxiety related disorders as "applicable to" Plaintiff (*id*. at 5). She indicated that encounters with other people and groups, as well as parties or social functions were potential "triggers" for Plaintiff's symptoms, but did not indicate that a work setting would be a trigger. *Id*. at 6. In addition, Ms. Voshart responded affirmatively to questions regarding whether Plaintiff's illness caused "marked differences [sic] in maintaining social functioning," restricted Plaintiff's daily activities, "caused deficiencies" in concentration and persistence, and had caused "repeated episodes of deterioration or decompensation in work or work-like situations." *Id*. Ms. Voshart qualified her prognosis of "very long term [treatment]" by stating that she had "only seen [Plaintiff] x 2 months," and "[p]rognosis would be too early to determine." *Id*. at 7. She then reported that Plaintiff "has very severe PTSD related to rape [and] torture on an ongoing basis x 9 months," and that Plaintiff "avoids people." *Id*. In addition, Ms. Voshart indicated that Plaintiff suffers from hypothyroidism and bipolar disorder, type II, and that she "dissociates most of the time 70-80% of the time." *Id*.

In part II of the form, Ms. Voshart indicated that two "understanding and memory" functions were "not significantly limited," but that Plaintiff's "ability to understand and remember detailed instructions" was moderately limited. *Id*. With respect to "sustained concentration and

persistence" functions, Ms. Voshart indicated several functions in which she felt Plaintiff was "markedly" limited, including her "ability to sustain an ordinary routine without special supervision." *Id*. at 8. Somewhat incongruously, Ms. Voshart opined that Plaintiff was "not significantly limited" in her "ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances." *Id*. Regarding Plaintiff's "social interaction" functioning, Ms. Voshart indicated that Plaintiff was not significantly limited in her ability to ask simple questions or request assistance; was moderately limited in her abilities to accept instructions and to respond appropriately to criticism from supervisors and to maintain socially appropriate behavior; and was markedly limited in her abilities to interact with the general public and to get along with coworkers. *Id*. at 9-10. Finally, in assessing Plaintiff's "adaptation" abilities, Ms. Voshart indicated that Plaintiff had marked limitations only in her abilities to respond appropriately to changes in a work setting and to travel in unfamiliar places or use public transportation. *Id*. at 10-11.

The ALJ assigned "little weight" to Ms. Voshart's assessment, explaining:

> I note at the outset that Ms. Voshart is not a psychiatrist or licensed or certified psychologist and hence she is not an acceptable medical source as defined in 20 CFR 416.913(a). I note that the psychiatrist and licensed psychologist who evaluated [Plaintiff] indicated [she] has a much higher functional level, as discussed in detail above. Secondly, by her own admission, Ms. Voshart had only been treating [Plaintiff] for two months at the time she prepared the above evaluation. Third, most of Ms. Voshart's evaluation consists of check-off boxes or circled symptoms with very little in the way of explanation or objective clinical findings to support her conclusions. Fourth, [Plaintiff] did not start seeing Ms. Voshart until after she received her notice of [the ALJ] hearing. Thus, the timing of her complaints to this provider is suspect. Fifth, her opinions of [Plaintiff]'s limitations seem to be based primarily on [Plaintiff]'s subjective statements to the provider and not on any actual observed behaviors or objective clinical findings. Finally, the limitations Ms. Voshart assessed are not consistent with the claimant's own admitted activities or with the rest of the medical record. For example, Ms. Voshart indicated that [Plaintiff] "dissociates 70 to 80 percent of the time" [citing *Doc. 15-3* at 7]. However, there was absolutely no evidence of

this at the hearing or anywhere else in the record, including the reports by Dr. Ortiz and Dr. Loescher or treatment records from other mental health providers.

[*Doc. 15-3* at 20-21].    Plaintiff attempts to discredit each of the reasons stated by the ALJ for her effective rejection [4] of Ms. Voshart's assessment, concluding that they are "insufficient." [*Doc. 20* at 17].    Plaintiff then contends that the ALJ's assignment of more weight to other medical sources was based on a faulty premise that those sources' opinions were more consistent with the evidence as a whole, and asserts that the ALJ failed to include certain "moderate" limitations indicated by those sources in Plaintiff's RFC.    *Id.* at 17-20.    The Court is not persuaded by these arguments.

It is true, as Plaintiff claims, that the opinions of non-acceptable sources can, under the right circumstances, be given greater weight than even that of a treating acceptable source.    *See, e.g.*, Soc. Sec. Rep. 06-03p at *5.    However, that principle does not support Plaintiff's further argument that the ALJ impermissibly rejected Ms. Voshart's opinion because it was not from an acceptable source.    First, the ALJ did not reject the opinion based solely on the fact that Ms. Voshart is not an acceptable source; she gave several reasons for discounting it.    *See* [*Doc. 15-3* at 20-21].    Second, the fact that a non-acceptable source opinion "may" be given significant weight does not equate to abolishment of the rule that preference is generally given to "acceptable" sources.    *See* 20 C.F.R. § 416.927. [5]    Finally, the reasons the ALJ gave for discounting Ms. Voshart's opinion are valid, supportable, and sufficient to permit the Court to

---

[4] Assigning "little weight" to a medical source's opinion effectively rejects it.    *See, e.g., Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

[5] This provision describes the evaluation of opinion evidence for claims filed before March 27, 2017, such as the claim in this case.

follow her reasoning, which is all they need to be.  SSR 06-03p at *6.  *See also Lundgren v. Colvin*, 512 F. App'x 875, 879-80 (10th Cir. 2013) (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) for the proposition that the fact that one source is an acceptable source and another is not "alone justifies reliance" on the acceptable source).

Plaintiff also attempts to buttress Ms. Voshart's opinion by likening it to the opinions provided by examining source Mary S. Loescher, Ph.D. and non-examining source Richard Reed, Ph.D., while simultaneously suggesting that Dr. Reed's RFC analysis is inconsistent with his worksheet findings, and that the ALJ failed to properly account for all of these sources' "moderate" findings.  [*Doc. 20* at 17-20].  In this argument, Plaintiff essentially argues that a "moderate" limitation in performance is equivalent to an "inability" to perform.  However, this is not the case.  In Section I of the standard Mental RFC form,[6] the assessing source rates the claimant's ability to perform twenty work-related functions within four categories: "understanding and memory"; "sustained concentration and persistence"; "social interaction"; and "adaptation."  *Id*.  The assessing source gives his or her opinion regarding the claimant's ability to perform each function based on the following possible responses:   "not significantly limited"; "moderately limited"; "markedly limited"; there is "no evidence of limitation in this category"; or the claimant's ability is "not ratable on available evidence."  *Id.*  Instructions for completing Section I of the form specify that "moderately limited" should be selected "when the evidence supports the conclusion that the individual's capacity to perform is impaired."   POMS DI

---

[6] This form is designated SSA-4734-F4-SUP, and is available at www.ssdfacts.com/forms/SSA-4734-F4-SUP.pdf (site last visited April 12, 2017).

24510.063.[7]   The instructions for moderate limitations further provide that "[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III."   *Id*. "Markedly limited," on the other hand, should be selected "when the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity."   *Id*.   The instructions only require additional explanation regarding moderate limitations because that choice covers the vast area between the two extremes of "not significantly limited" and "markedly limited," which are effectively the equivalent of "no impairment" and "cannot perform."   *See, e.g.,* 20 C.F.R. § 416.920a(c)(4) (on mental impairment rating scales, "the last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity"). Thus, for purposes of accurately assessing a claimant's performance abilities, it is helpful to have some idea of approximately where on the scale between the two extremes their ability would fall. This scale has been criticized for its inherent imprecision.   *See, e.g.,* Agatstein, D. J., *PRTF & MFRC: Determining and Describing the Functional Severity of Mental Impairments*, Assoc. of Admin. Law Judges, Educ. Conf. (October 28, 2015), at 21-23.[8]   However, one thing that the instructions do make clear is that "markedly limited," rather than "moderately limited" is the appropriate selection if the claimant is effectively unable to perform a function.   Therefore, the Court rejects Plaintiff's implicit assertion that moderate limitations with respect to basic job functions effectively preclude her performance of them.

---

[7]   Available at https://secure.ssa.gov/poms.nsf/lnx/0424510063 (site last visited April 12, 2017).

[8]This document is available at https://aalj.org/document/2838/mental-downloads-augustine (site last visited April 12, 2017).

Dr. Loescher did not assess Plaintiff with a standard Mental RFC form and, therefore, did not complete a check-box rating of Plaintiff's limitations with respect to specific work functions. [*Doc. 15-10* at 34-37]. This makes it difficult, if not impossible, to effectively "compare" Dr. Loescher's assessment with that provided by Ms. Voshart. However, although much of Dr. Loescher's assessment consists of Plaintiff's subjective reporting of her history and symptoms, the final portion, entitled "Summary and Impressions" clearly constitutes Dr. Loescher's own opinion. That opinion includes the following statements:

> From a cognitive standpoint [Plaintiff] would be mildly impaired, if at all, in her ability to understand, remember, and follow through on basic work instructions. She would most likely be able to follow through on more complex work instructions if she understood them. From a psychological standpoint, she presents as someone who would be at least moderately impaired [in] her ability to interact with others in a work setting on a consistent basis.

*Id*. at 36. Thus, the only moderate limitation described in Dr. Loescher's opinion was with respect to Plaintiff's ability to "interact with others in a work setting on a consistent basis." That limitation was, in fact, included in the ALJ's RFC, which limits Plaintiff to "only superficial interactions with co-workers and supervisors." [*Doc. 15-3* at 17]. The ALJ gave "significant weight" to Dr. Loescher's assessment. *Id*. at 21.

On the other hand, Dr. Reed did assess Plaintiff's ability to perform specific work functions. [*Doc 15-4* at 10-11]. His assessments of those functions were divided almost equally between "not significantly limited" and "moderately limited" functions. *Id*. Plaintiff contends both that the ALJ did not incorporate Dr. Reed's moderate limitations and that Dr. Reed's own summary explanation is inconsistent with those limitations. Thus, Plaintiff simultaneously

attacks Dr. Reed's conclusions and asserts that his findings were ignored by the ALJ. Nonetheless, the majority of moderate limitations in Dr. Reed's assessment are within the category "social interaction," after which, Dr. Reed added the explanation that "[p]sych CE[9] opines moderate limitations due to [Plaintiff]'s personality characteristics." *Id.* at 11. Dr. Reed's summary indicates that Plaintiff "can understand, remember, and carry-out detailed but not complex instructions, make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers, and supervisors, and respond appropriately to changes in a work setting (semi-skilled)." *Id.* at 11. The ALJ gave Dr. Reed's evaluation only "some weight," stating:

> I give some weight to the State agency evaluations because they are partially consistent with the objective clinical findings and the claimant's daily activities. However, I find that the record as a whole, including the objective clinical findings, the claimant's mental health treatment, and her daily activities, is more consistent with a limitation to simple instructions, occasional public contact, and superficial interactions with co-workers and supervisors.

[*Doc. 15-3* at 18]. The ALJ's RFC was also significantly more limited with respect to Plaintiff's abilities than was Dr. Reed's. *Id.* at 17.

In sum, the ALJ adequately stated the reasons for the weights she assigned to the medical sources, both acceptable and not acceptable. Although Plaintiff argues that the ALJ did not sufficiently "explain" the moderate limitations indicated by Drs. Loescher and Reed, no such explanation is required. As the Tenth Circuit recently stated, "an [ALJ] can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*,

---

[9] This statement appears to refer to Dr. Loescher. *See* Dr. Reed's "PRT—Additional Explanation." [*Doc. 15-4* at 8].

821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)). That is precisely what the ALJ did in this case. Therefore, the Court finds this argument to be without merit.

### 2. Plaintiff's Obesity

Plaintiff argues that the ALJ "failed to consider the effect of obesity on [Plaintiff]'s functioning." [*Doc. 20* at 21]. In fact, however, the ALJ indicated at step two of her SEP that Plaintiff's "back condition and obesity, alone or in combination are 'non-severe' impairments," basing that conclusion on physical findings by Matthew Caffrey, M.D., Raul Neftali Young-Rodriguez, M.D., and Lindsay E. Riggin, M.D. [*Doc. 15-3* at 15]. The ALJ also indicated that she "considered the effects of [Plaintiff]'s obesity, pursuant to Social Security Ruling 02-1p." *Id*. These statements by the ALJ are sufficient to overcome Plaintiff's superficial argument that the ALJ erred in her consideration of Plaintiff's obesity.

### 3. Plaintiff's Credibility

Finally, Plaintiff argues that "[t]his case should be remanded for a specific, legally supported credibility analysis" because the ALJ did not "closely and affirmatively" link her credibility finding to substantial evidence. [*Doc. 20* at 22]. In this argument, Plaintiff picks certain reasons for the ALJ's finding that she was "not entirely credible" and attempts to establish that those reasons are invalid. *Id*. at 21-22. "Credibility determinations are peculiarly the province of the finder of fact," and will not be upset "when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Here, notwithstanding Plaintiff's claims, the Court cannot conclude that the ALJ's credibility analysis is unsupported by substantial evidence. The ALJ relied on both medical source statements that did not fully support Plaintiff's statements, and Plaintiff's own statements both before and at the

hearing, that were inconsistent with her claims.   [*Doc. 15-3* at 21-22].   Plaintiff's objections to

the ALJ's reasoning are insufficient to lead this Court to conclude that the reasons given are not

supported by substantial evidence.   Therefore, this argument is also without merit.

## B.   The ALJ's Step Five Analysis

Plaintiff asserts two grounds for reversal of the ALJ's step five finding that there are a

significant number of jobs in the national economy that Plaintiff can perform.   Plaintiff's first

argument is that three of the four jobs given by the VE as representative of jobs that Plaintiff

retains the capacity to perform require a higher level of reasoning ability than Plaintiff's RFC

allows.   [*Doc. 20* at 22-24]   Plaintiff's second claim is that the ALJ improperly relied on

"inherently unreliable" VE testimony regarding the number of hand cleaner/polisher jobs, since "it

appears" that the number given by the VE covered the entire vocational category in which hand

cleaner/polisher is included, rather than the specific number of hand cleaner/polisher jobs.   *Id*.

at 24-25.   Defendant responds that there is no inconsistency between level 2 reasoning jobs and

Plaintiff's RFC, but does not address Plaintiff's job numbers argument.   [*Doc. 22* at 22-24].

### 1.   Consistency of Representative Jobs with Plaintiff's RFC

Plaintiff contends, as did the Plaintiff in *Hackett*, 395 F.3d 1168 (10th Cir. 2005), that there

is a conflict between the VE's testimony and the DOT (*Doc. 20* at 23).   In *Hackett*, the plaintiff's

RFC included a limitation to "simple and routine work tasks."   *Id*. at 1171.   Similarly, in the

present case, Plaintiff's RFC limits her to understanding, remembering, and carrying out "simple

instructions" and performing "simple tasks" for up to two hours at a time.   [*Doc. 15-3* at 17].   In

*Hackett,* the VE selected the job of surveillance system monitor as a representative job the plaintiff in that case could perform. Surveillance system monitor has a reasoning rating [10] of 3. Likewise, the job of shipping-and-receiving weigher has a reasoning rating of 3, although both industrial cleaner and laundry worker have reasoning ratings of 2, and hand cleaner/polisher has a reasoning rating of 1.. The *Hackett* court found that a "limitation [to simple and routine work tasks] seems inconsistent with the demands of level-three reasoning." *Id.* at 1176 (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) as "rejecting contention that a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of two or higher"). Concluding that "level-two reasoning appears more consistent with Plaintiff's RFC," the *Hackett* court reversed and remanded "to allow the ALJ to address the apparent conflict." *Id.*

Plaintiff cites *Paulek v. Colvin*, 662 F. App'x 588 (10th Cir. October 3, 2016) (unpublished) for the proposition that "[r]easoning level 2 jobs also are inconsistent with the restriction to simple work in the RFC finding," noting that *Paulek*, too, relied on the Eighth Circuit's *Lucy v. Chater* decision. [*Doc. 20* at 23]. Even if this Court were to agree that *Paulek*

---

[10] The VE in this case did not testify regarding the reasoning levels of the representative jobs. However, that information is contained in the "trailer" to the job definitions in the DOT. Reasoning, Math, and Language are divisions of General Educational Development (GED), which is described at http://www.occupationalinfo.org/appendx_1.html (site last visited April 12, 2017). A level 2 reasoning job requires employees to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" [and] [d]eal with problems involving a few concrete variables in or from standardized situations," while level 3 reasoning jobs require the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]al with problems involving several concrete variables in or from standardized situations." *Id.* As an example, the trailer to the DOT's description of "document preparer" is "GOE: 07.05.03 STRENGTH: S **GED: R3** M1 L2 SVP: 2 DLU: 86" (emphasis added), which indicates that it has a reasoning rating of 3.

stands for such a proposition, which it does not, *Paulek* is an unpublished decision that cannot be relied upon as grounds for disregarding the holding in *Hackett*.

      *Hackett* was also the reason given in two other decisions from this District that also remanded for consideration of the conflict between a restriction to "simple" work and a representative job with a reasoning level of 3. *See Bier v. Colvin*, 15 F.Supp.3d 1143 (D. N.M. 2014) and *Holt v. Colvin*, CIV-14-0024 KBM (April 16, 2015) (unpublished). In *Bier*, the Commissioner asserted that the restrictions in that case were "not exactly the same," but failed to argue that the difference was "meaningful." *Bier*, 15 F.Supp.3d at 1148, n. 4. Although an argument might have been made for distinguishing the RFC in this case from the one in *Hackett*, it was not. Instead, Defendant contends that *Hackett* "did not discuss the claimant's educational level," nor consider whether the conflict between a reasoning level of 3 and an RFC limiting the claimant to simple and routine work tasks "might be explained by the fact that GED [level] describes general educational background, rather than the specific mental or skill requirements of a particular job." [*Doc. 22* at 23] (citing *Hackett*, 395 F.3d at 1176). Defendant then cites two unpublished Tenth Circuit opinions issued after *Hackett* (*Anderson v. Colvin*, 514 F. App'x 756 (10th Cir. April 4, 2013) (unpublished) and *Mounts v. Astrue*, 479 F. App'x 860 (10th Cir. May 9, 2012) (unpublished)), as having "recognized that GED levels describe general educational backgrounds, not specific mental or skill requirements." *Id*. at 23-24. Neither of those cases actually conflicts with *Hackett*. Moreover, even if they did, this Court cannot disregard a published Tenth Circuit opinion in favor of unpublished ones. As was noted in *Bier*, *Hackett* "is binding precedent in this circuit." *Id*. at 1148.

      The Court concludes that Plaintiff's reasoning level argument has merit only with respect to the job of shipping-and-receiving weigher, which has a reasoning rating of 3. Since the other

three representative jobs have reasoning ratings of 1 and 2, they fall within the parameters of *Hackett* and are consistent with Plaintiff's limitation to "simple" work. As such, any error by the ALJ in relying on the job of shipping-and-receiving weigher as a job that Plaintiff can perform, is harmless, unless the other three jobs are invalid on other grounds.

## 2. VE's Testimony Regarding Job Numbers

The VE testified that, based on Plaintiff's age, education, and RFC, she could perform the jobs of industrial cleaner, laundry worker, hand cleaner and polisher, and shipping-and-receiving weigher. As already discussed, the shipping-and-receiving weigher job has a reasoning rating that appears to be inconsistent with Plaintiff's RFC, pursuant to *Hackett*. The numbers given by the VE for the other three jobs are: 1,118,000 for industrial cleaner; 162,000 for laundry worker; and 71,000 for hand cleaner and polisher.[11] [*Doc. 12-4* at 53]. However, Plaintiff contends that the job number stated by the VE for cleaner and polisher is "unreliable" because the number given, 71,000, actually relates to an entire job category, "Production Laborers," that includes "hundreds of [other] jobs," many of which Plaintiff could not perform. [*Doc. 20* at 24]. Based on this, Plaintiff argues that the ALJ's finding that "there are jobs that exist in significant numbers in the

---

[11] The Court notes that, if these figures are correct, they should be sufficient to support the ALJ's finding that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." [*Doc. 12-3* at 27]. *See, e.g., Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. January 29, 2016) (unpublished) ("we have held an ALJ's erroneous inclusion of some jobs to be harmless error where there remained a significant number of other jobs in the national economy. *See, e.g., Bainbridge v. Colvin*, 618 Fed. Appx. 384, 391-92 (10th Cir. 2015) (500,000 jobs); *Shockley v. Colvin*, 564 Fed. Appx. 935, 940-41 (10th Cir. 2014) (215,000 jobs); *Chrismon v. Colvin*, 531 Fed. Appx. 893, 899-900 (10th Cir.2013) (212,000 jobs); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir.2008) (152,000 jobs)"). The *Evans* court further indicated that, although there is no "bright line" number that is "significant," "the number appears to be somewhere between 100, the number of jobs in *Allen* [*v. Barnhart*, 357 F.3d 1140] that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes* [*v. Astrue*, 274 F. App'x 675]) to be sufficient." *Evans*, 640 F. App'x at 736.

national economy that [Plaintiff] can perform" is not supported by substantial evidence.   *Id*. at 25.

Significantly, however, Plaintiff did not challenge the numbers that were given by the VE for any

of the other representative jobs.   Instead, she challenged the ALJ's inclusion of all three other jobs

solely on the basis that they are excludable due to their reasoning levels.   *Id*. at 22-24.   This

Court has already determined that argument to be without merit as to all but the job of

shipping-and-receiving weigher.   Eliminating the shipping-and-receiving weigher job on the

basis of its level 3 reasoning, and the job of hand cleaner and polisher on the basis of this challenge

to its job numbers, leaves intact the ALJ's finding, based on the VE's testimony, that the jobs of

industrial cleaner and laundry worker are jobs that Plaintiff can perform.   The numbers for both of

those jobs total 1,280,000, which is more than sufficient to satisfy the standard that there be

"significant" numbers.   *See* n. 12, *supra*.   Since Plaintiff's counsel did not make this argument as

to any of the jobs at the ALJ hearing, there is no factual record upon which to determine whether

the statements made by Plaintiff on appeal are valid.   Absent both a factual record and any

argument on appeal, the Court will not consider whether the job numbers testified to for industrial

cleaner and laundry worker are subject to a similar challenge, despite Plaintiff's assertion that this

issue has been conceded by Defendant.   [*Doc. 23* at 6].

------------------------

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be affirmed on the issues of both the ALJ's RFC analysis and her reliance on the testimony by the VE.

**IT IS THEREFORE ORDERED** that Plaintiff's ***Motion to Reverse and Remand for Payment of Benefits, or in the alternative, for Rehearing, with Supporting Memorandum*** (*Doc. 20*) is **DENIED** and the Commissioner's decision in this case is **AFFIRMED**.   A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**